RECEIVED

OCT 0 7 2025

BY MAIL

THEODISE D. PERKINS
REG. NO. 22018-509
FCI VICTORVILLE MEDIUM II
FEDERAL CORR. INSTITUTION
PO BOX 3850
ADELANTO, CA 92301

September 30, 2025

Mr. Nathan M. Graves
Clerk of Court
U.S. District Court
Eastern District of Missouri
St. Louis Division
111 South 10th Street
St. Louis, MO 63102

4: 20CR 723 SEP

      RE:   *Perkins v. United States*
            Crim No. 1:20-cr-00137-CG-B-1

Dear Mr. Graves:

    Enclosed please find and accept for filing Movant's Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. Amendment 821. Please submit this document to the Court.

    Thank you for your assistance in this matter.

                  Sincerely,

                  THEODISE D. PERKINS
                  Appearing *Pro Se*

*Encl. as noted*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CRIM NO. 1:20-cr-00137-CG-B-1 |
| | ) | |
| THEODISE D. PERKINS, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR SENTENCE REDUCTION PURSUANT TO
## 18 U.S.C. § 3582(C)(2) AND U.S.S.G. AMENDMENT 821

COMES Defendant, THEODISE D. PERKINS ("Perkins"), appearing *pro se,* and in support of this memorandum would show as follows:

## I. JURISDICTION

"The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582." *United States v. Black,* 737 F.3d 280 (4th Cir. 2013). The scope of a proceeding under 18 U.S.C. § 3582(c)(2) in cases like this one is extremely limited. *Dillon v. United States*, 130 S.Ct. 2683, 2687(2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." *Id.* However, Congress has allowed an exception to that rule "in the case of a defendant who has

1

been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see also, *Freeman v. United States*, 131 S.Ct. 2685(2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. See *Dillon*, 130 S.Ct. at 2690–91.

## II. **PROCEDURAL HISTORY**

### A.    **Procedural Background**

On November 12, 2020, a grand jury sitting in the United States District Court for the Eastern District of Missouri, Eastern Division, returned a two (2) count Indictment charging Perkins. See Docs. 1, 2.[1] Count 1 charged Perkins with Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *Id.* Count 2 charged Perkins with Possession of Firearm in Furtherance fo Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A). *Id.*

On May 18, 2022, a Change of Plea Hearing was held and Perkins entered a guilty plea as to Count 1 of the Indictment pursuant to a Written Plea Agreement. See Docs. 66, 67.

---

[1]    "Doc." refers to the Docket Report in the United States District Court for the Eastern District of Missouri, Eastern Division in Criminal No. 1:20-cr-00137-CG-B-1, which is immediately followed by the Docket Entry Number.

On January 18, 2024, Perkins was sentenced to a term of 51 months'
imprisonment, 3 years of Supervised Release, no Fine or Restitution, and a
Mandatory Special Assessment Fee of $100. See Docs. 108, 109.

### B.    Statement of the Facts

### 1.    Offense Conduct

The government and Perkins, through the advise of his counsel, agreed to the
following:

> On March 4, 2020, officers with the St. Louis Metropolitan Police
> Department (SLMPD) observed a black Nissan Maxima without a front
> license plate on West Florissant Avenue near Union Boulevard. The
> officers pulled behind the Maxima and activated their emergency lights.
> The driver, Stephan Perkins, accelerated to a dangerous rate of speed in
> an attempt to evade police, at one point crossing the double yellow line
> into oncoming traffic. As the Maxima approached the intersection at
> Goodfellow Boulevard, the SLMPD deployed a spike strip, which
> deflated at least one of the tires. Although the Maxima reduced speed,
> it continued for more than a mile before the passenger, Perkins, jumped
> out of the car with a satchel and ran across the parking lot of a shopping
> center. The officers then separated to pursue both Perkins and the
> Maxima.
>
> As officers chased Perkins on foot, they saw him clutching the satchel
> as if it contained a gun. Shortly thereafter, Perkins dropped the satchel
> just before another officer forced him to the ground. The officers could
> see a gun in the satchel, and in the process of securing the loaded
> .45-caliber Ruger, they noticed a large, clear plastic bag containing
> multiple baggies filled with white powder and capsules. The satchel also
> contained a digital scale with white powder residue, a cell phone with
> powder residue, and two Dormin bottles. Additionally, officers found
> $1004 on Perkins' person.

3

Meanwhile, the Maxima accelerated again before turning into a parking lot further down the strip center, where it came to a stop. Stephen was taken into custody without further incident. When officers got to the Maxima, they observed a loaded .45-caliber Glock 30 with a large-capacity magazine on the passenger floorboard. Behind the driver seat, officers found a black backpack containing a digital scale with white powder residue, two pink Dormin pills, and a single purple-and-clear capsule filled with white powder. Officers also seized three cell phones from the vehicle. All four cellphones were subsequently searched pursuant to a valid search warrant.

The suspected controlled substances were later submitted to and analyzed by an expert criminalist with the SLMPD Crime Laboratory. The lab confirmed that the powder from the capsules and baggies contained approximately 19.77g of a mixture containing fentanyl. Perkins knew the fentanyl was a controlled substance and he knowingly possessed the fentanyl with the intent to distribute some or all of the drug to another individual. Subsequent investigation revealed that the Ruger from Perkins' satchel was reported stolen. Additionally, the SLMPD Crime Laboratory determined that both the Ruger and the Glock were manufactured outside the State of Missouri and could expel a projectile by the action of an explosive, thus qualifying as "firearms" as defined under federal law.

See Doc. 67 at 3-4.

        2.     Plea Proceeding

On May 18, 2022, a Change of Plea Hearing was held before District Judge Sarah E. Pitlyk. See Doc. 66. Perkins pleaded guilty on Count 1 of the Indictment, pursuant to a Plea Agreement. See Doc. 67. In exchange of his guilty plea, the government recommended a 3-level reduction for acceptance of responsibility pursuant to USSG §§ 3E1.1(a) and (b). *Id.*

3.    <u>Sentence Proceeding</u>

On January 18, 2024, a Sentencing Hearing was held before District Judge Sarah E. Pitlyk. See Doc. 108. This Court sentenced Perkins to 51 months' imprisonment. See Doc. 109. It is followed by 3 years of Supervised Release. *Id.* This Court also ordered a payment of a Mandatory Special Assessment Fee of $100. *Id.* No direct appeal was filed in this case.

### III. <u>DISCUSSION</u>

As a preliminary matter, Perkins respectfully requests that this Court be mindful that *pro se* litigants are entitled to liberal construction of their pleadings. See *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."); *Haines v Kerner*, 404 U.S. 519, 520 (1972).

### A.    <u>Amendment 821 of the United States Sentencing Guidelines</u>

1.    On April 27, 2023, the Sentencing Commission voted to promulgate Amendment 821 to the Sentencing Guidelines. In part, this amendment alters the application of the Guidelines with respect to certain offenders who (a) earned criminal history "status points" based on commission of an offense while serving a criminal justice sentence, or (b) presented zero criminal history points at the time of sentencing. This amendment took effect on November 1, 2023.

5

2.       Specifically, with regard to "status points," under U.S.S.G. § 4A1.1, a defendant who committed the instant offense "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status," previously received two additional criminal history points. Amendment 821 amends Section 4A1.1 to: (1) eliminate such status points for any defendant who otherwise has six or fewer criminal history points; and (2) apply one point, instead of two, for defendants who otherwise present seven or more criminal history points.

3.       With regard to "zero-point offenders," the Commission's amendment adds a new Section 4C1.1, which reduces by two offense levels the guideline range for defendants with zero criminal history points. The two-level reduction, however, is not available under this provision to a defendant if one of the nine exceptions stated in the new guideline applies.

4.       On August 24, 2023, the Commission voted to give retroactive effect to these two changes, as of November 1, 2023, subject to disapproval by Congress. In order to permit the orderly disposition of what is expected to be a substantial volume of motions for sentence reductions (possibly in the tens of thousands nationwide), the Commission decreed that while inmates will be able to file motions beginning on November 1, 2023, under 18 U.S.C. § 3582(c)(2), seeking a reduction in sentence

based on the retroactive amendment, an individual whose request is granted by the Court may be released from prison no earlier than February 1, 2024.

**B.      Modification of Sentence pursuant to 18 U.S.C. § 3582(c)(2)**

"In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guidelines provisions that were applied when the defendant was sentenced, and shall leave all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(b)(1).

After the district court determines what the modified sentence would be, the district court is required to consider any applicable factors under 18 U.S.C. § 3553 in deciding whether a sentence modification is "warranted in whole or in part under the particular circumstances of the case." *Dillon*, 130 S.Ct. at 2692. "Because reference to § 3553 is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under § 3582(c)(2) into preliminary re-sentencing proceedings." *Id.* Thus, even if Perkins qualifies for sentence modification under the first step of the analysis, the decision whether to ultimately grant a modification is left to the sound discretion of the trial court. See *Dillon*, 130 S. Ct. at 2692.

This Court must first apply Amendment 821 retroactively and recalculate the applicable sentencing range for Perkins to determine whether a retroactive application

of Amendment 821 lowers his sentencing range. Here, Perkins respectfully submits that his sentence of 51 months' imprisonment warrants reduction under Amendment 821 to the United States Sentencing Guidelines, and that doing so would not only be legally justified, but also consistent with the principles of justice, rehabilitation, and proportionality that animate the federal sentencing structure.

Perkins, who was just 19 years old at the time of his arrest, was convicted of a nonviolent drug offense—possession with intent to distribute fentanyl—with no prior criminal record, no adjudicated use of violence, and no evidence that he caused harm to anyone. The indictment against him did not specify a drug quantity. It was only in the plea agreement that the Government introduced an estimated amount—19.77 grams of fentanyl—for guideline calculation purposes. In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and reaffirmed in *Alleyne v. United States*, 570 U.S. 99 (2013), the Supreme Court held that any fact that increases a defendant's statutory minimum or maximum sentence must be either admitted or proven to a jury beyond a reasonable doubt. While guideline calculations may still be influenced by judicial fact-finding under current law (*United States v. Booker*, 543 U.S. 220 (2005)), the ambiguity surrounding the drug quantity and its omission from the charging instrument should weigh heavily in favor of leniency.

Despite the relatively small quantity involved and Perkins' lack of criminal history, the Government insisted on applying a 2-level enhancement for firearm possession, even though the firearm charge (Count 2) had been formally dismissed through the government's motion. That enhancement was not supported by any factual finding or judicial admission connecting the firearm to the drug offense. It rested solely on tenuous allegations in the Presentence Report, which Perkins did not have a meaningful opportunity to challenge. Courts, particularly in the Eighth Circuit, have consistently held that such enhancements are improper when not supported by reliable evidence or when based on dismissed or unproven conduct. (See *United States v. Bell*, 911 F.3d 763, 767 (4th Cir. 2018); *United States v. Wise*, 976 F.2d 393, 401 (8th Cir. 1992)).

Adding to the overstatement of his criminality, Perkins received two additional criminal history points due to an incident in which he fled from a cell during detention. But this behavior was not motivated by a desire to avoid justice—it was the result of an untreated mental health crisis. Perkins was undergoing severe narcotic withdrawal, compounded by psychological abuse and manipulation by BOP staff who fed him misinformation, resulting in auditory hallucinations and extreme emotional instability. In that fragile state, he acted irrationally, a fact supported by the symptoms he displayed and the clear absence of violent intent. Yet the BOP failed to evaluate

9

or treat him adequately, and the Court failed to consider these serious mitigating mental health circumstances during sentencing.

Amendment 821, which the Sentencing Commission made retroactive in February 2024, was designed to provide relief in precisely these kinds of cases—low-level, nonviolent, first-time drug offenders who have been over-punished through mechanical application of enhancements and inflexible criminal history calculations. The amendment created a new section, § 4C1.1, providing a 2-level downward adjustment for "zero-point offenders" who meet specific criteria. Perkins qualifies in every respect:

- He had no prior convictions and would have had zero criminal history points but for the disputed 2-point enhancement for flight;
- His offense involved no violence, injury, or credible use of a weapon;
- The weapon enhancement was based solely on a dismissed charge, not proven conduct; and
- His behavior in custody, while used against him, was the product of psychological distress, not criminal intent.

Beyond legal eligibility under the amendment, Perkins' sentence stands out as disproportionate when viewed against Eighth Circuit sentencing patterns for similar cases. In multiple cases involving roughly the same amount of fentanyl—under 20 grams—defendants with no weapon convictions and little to no prior criminal history have received 24 to 36 months. (See, e.g., *United States v. Rodriguez*, 8th Cir. No. 21-1423; *United States v. Hawkins*, 848 F. App'x 707 (8th Cir. 2021)). In contrast,

10

Perkins received 51 months, despite being younger, nonviolent, and first-time.

At the time of his offense, Perkins was only 19 years old—an age that modern neuroscience and constitutional law recognize as developmentally significant. The prefrontal cortex, which governs impulse control, judgment, and risk assessment, continues to mature into a person's mid-20s. The Supreme Court has acknowledged this developmental science in cases like *Miller v. Alabama*, 567 U.S. 460 (2012), and *Roper v. Simmons*, 543 U.S. 551 (2005), making clear that youthfulness reduces culpability and enhances the capacity for change. Perkins' sentencing failed to account for these realities.

Additionally, § 3553(a) demands that sentences be "sufficient, but not greater than necessary" to achieve the goals of sentencing. These include punishment, deterrence, and rehabilitation—but also fairness and individualized assessment. A sentence of 51 months for a 19-year-old first-time offender with less than 20 grams of fentanyl, no weapon conviction, and mental state instability cannot be squared with those principles—particularly when the Sentencing Commission has now acknowledged, through Amendment 821, that such cases deserve special consideration.

Perkins is not the same person he was at 19. He has grown, matured, and taken steps toward accountability and rehabilitation. The system now provides the Court

with the authority—and the legal basis—to right-size his sentence. Doing so would not only correct a past error, but would affirm this Court's commitment to justice rooted in individualized sentencing, mental health awareness, and proportionate punishment.

Accordingly, Perkins respectfully requests that this Court grant his motion under 18 U.S.C. § 3582(c)(2) and reduce his sentence to reflect the 2-level adjustment provided by Amendment 821, while also reconsidering the improper firearm enhancement and unjust criminal history points. A sentence in the range of 30–37 months, or time served, would be just, reasonable, and consistent with federal law.

Perkins also argues that the unwarranted sentencing disparity factor must be determined only with reference to those comparably situated defendants who were sentenced at the time of Perkins' sentencing and those being sentenced today under a different sentencing structure.

Perkins is now, in effect, to be re-sentenced on or after the passage of the 821 Amendment; and the need to avoid unwarranted sentencing disparities is to be assessed at the time of his sentencing today relative to those comparable offenders who would be sentenced following the passage of the 821 Amendment, which expressly allowed for the possibility for a sentence reduction based on an individualized assessment of the § 3553(a) factors and other criteria.

12

Next, Perkins argues that a reduction of sentence is warranted to avoid unwanted sentencing disparities, taking into consideration case-specific circumstances related to Perkins' character, and in light of his post-sentencing rehabilitation. Perkins contends that leaving his current sentence in place would create at least two kinds of disparity: (1) a disparity between Perkins [and his co-defendants]; and (2) a disparity between Perkins and other similarly situated drug offenders who would receive reductions under the 821 Amendment. In addition to the need to avoid unwarranted sentence disparities, Perkins argues that the unique circumstances of his case warrant a variance.

See e.g., *United States v. Vazquez-Rivera*, 470 F.3d 443, 449 (1st Cir. 2006) (recognizing that "a district court may consider disparities among co-defendants in determining a sentence"); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006) ("Although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so."); *United States v. Gomez*, 215 F. App'x 200, 202 (4th Cir. 2007) (implying that consideration of co-defendant disparities is allowed, but concluding that Gomez was not similarly situated to the co-defendant); *United States v. Bennett*, 664 F.3d 997, 1015 (5th Cir. 2011) ("[A]voiding unwarranted sentencing disparities among co-defendants is a valid sentencing consideration."), cert. denied, 11-9109, 2012 WL 733887 (Apr. 2,

13

2012); *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) ("A district judge, however, may exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence."); *United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) ("Pulley properly contends that § 3553(a)(6) does not allow unwarranted sentencing disparities between co-defendants." (citing *Statham*, 581 F.3d at 556; *Bartlett*, 567 F.3d at 908–09)); *United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006) (invalidating a sentence that resulted in unwarranted disparities between the sentences of the defendant and less culpable members of related conspiracies); *United States v. Saeteurn*, 504 F.3d 1175, 1181–83 (9th Cir. 2007) (upholding as a legitimate generalized § 3553(a) consideration the district court's decision to compare defendant with his co-defendants and sentence him in accordance with his role); *United States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008) ("[A] district court may also properly account for unwarranted disparities between codefendants who are similarly situated, and...the district court may compare defendants when deciding a sentence."); *United States v. Zavala*, 300 F. App'x 792, 795 (11th Cir. 2008) ("It is not erroneous for the district court to have considered the 'unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct' when the statute specifically mandates such consideration."); *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (considering and rejecting an argument that a

14

disparity between co-defendants' sentences was unwarranted), cert. denied, 131 S. Ct. 586 (2010).

In total, Perkins' sentence of 51 months far exceeds the national and Eighth Circuit norms for similarly situated defendants. For comparison:

- In *United States v. Rodriguez*, 8th Cir. No. 21-1423, the defendant received 27 months for a similar drug quantity and no prior record;

- In *United States v. Hawkins*, 848 F. App'x 707 (8th Cir. 2021), a sentence of 30 months was imposed for possession with intent to distribute 21 grams of fentanyl without a firearm charge;

- In *United States v. Anderson*, No. 19-1332 (8th Cir.), the court upheld a sentence of 24 months where the defendant possessed 17 grams of fentanyl and had no weapon or violence involved.

The courts are already using Amendment 821 to correct outdated or excessive sentences, especially when they stem from guideline calculations that no longer reflect current understanding of punishment, rehabilitation, and fairness.

In fact, in a recent district-level decision out of the Central District of California—*United States v. Berkett*—the court granted a sentence reduction under Amendment 821 even where some aggravating conduct had been alleged, because it was not adjudicated or factually developed. The court focused on what the guidelines now require: a focus on whether the offender's actual conduct, not uncharged or dismissed allegations, qualifies them for relief. Berkett's sentence was reduced

accordingly.

In *In re Shamburger*, decided in July 2025, the Eighth Circuit directly addressed this issue. There, the court held that defendants who received criminal history status points under § 4A1.1(d)—based merely on being under a criminal justice sentence at the time of the offense or similar conduct—must have those points re-evaluated under Part A of Amendment 821. In Shamburger's case, the defendant's total criminal history points dropped below the threshold for a higher guideline category, resulting in a significantly lower sentencing range. The court remanded the case for recalculation, emphasizing that Amendment 821 is not merely technical but reflects an evolving understanding of over-punishment in low-level drug cases.

As the Eighth Circuit recognized in *Shamburger*, and as courts like those in *Berkett* have affirmed, the amendment must be interpreted with its intent in mind: to ensure proportionate justice for low-level, first-time, nonviolent defendants who were previously over-sentenced. Thus, Perkins respectfully asks this Court to follow that trend—and the clear mandates of both the Commission and the Circuit—and grant a reduction of his sentence consistent with Amendment 821. Doing so would not only reflect the law, but also the very values of equity and individual consideration that sentencing reform is meant to uphold.

16

Under 18 U.S.C. § 3582(c)(2), to modify Perkins' sentence, taking into account the advisory nature of the guidelines after *Booker* and the considerations set forth in 18 U.S.C. § 3553(a). The court should find that a sentence of time served is sufficient, but not greater than necessary, and accounts for the sentencing factors the court must consider pursuant to 18 U.S.C. § 3553(a), specifically deterrence, protection of the public, and respect for the law.

Accordingly, this motion should be granted.

## IV. CONCLUSION

For the above and foregoing reasons, Perkins prays this Court would consider his Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(2) and that the Court reduce his sentence, in accordance with U.S.S.G. Amendment 821, or any other relief to which the Court deems him to be entitled.

Respectfully submitted,

Dated: September 22, 2025

THEODISE D. PERKINS
REG. NO. 22018-509
FCI VICTORVILLE MEDIUM II
FEDERAL CORR. INSTITUTION
PO BOX 3850
ADELANTO, CA 92301

17

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2025, I mailed a true and correct copy of the above and foregoing Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. 821 Amendment was sent via U.S. Mail, postage prepaid, to Kyle Timothy Bateman, Assistant U.S. Attorney at United States Attorney's Office - St. Louis, 111 S. Tenth Street, 20th Floor, St. Louis, MO 63102.

THEODISE D. PERKINS

18



**FIRMLY TO SEAL**

FSC MIX Board FSC™ C116916

PAPER POUCH

PRESS FIRMLY TO SEAL

UNITED STATES POSTAL SERVICE®

RDC 03     0 Lb 4.60 Oz     63102     S2324K502827-66

**$11.00**

**PRIORITY® MAIL**

...ed delivery date specified for domestic use.

...ic shipments include $100 of insur... ...oly).*

...racking® service includ... ...national destinations.

...internation...

...sed

...does n...

...ail Mar...

...national ...and limitations of coverage.

EXPECTED DELIVERY DAY: 10/06/25

USPS TRACKING® #



9505 5104 4801 5275 7921 95

...T RATE ENVELOPE

...TE ■ ANY WEIGHT

...CKED ■ INSURED



S00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

To schedule free Package Pickup,
scan the QR code.

USPS.COM/PICKUP



PAPER POUCH
how2recycle.info

FROM:

**RECEIVED**

OCT 07 2025

**BY MAIL**

THEODISE D. PERKINS
REG. NO. 22018-509
FCI VICTORVILLE MEDIUM II
FEDERAL CORR. INSTITUTION
PO BOX 3850
ADELANTO, CA 92301

TO:

Mr. Nathan M. Graves, Clerk of Court
U.S. District Court
Eastern District of Missouri
St. Louis Division
111 South 10th Street
St. Louis, MO 63102

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.